# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| FURNISS HARKNESS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cv-3003-SHL-dkv |
| | ) | |
| SECRETARY OF THE NAVY, | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING THE SECRETARY'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT; DENYING HARKNESS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING HARKNESS' MOTION TO STAY; DENYING HARKNESS' MOTION TO STRIKE; DENYING HARKNESS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION

This case involves questions of administrative and constitutional law raised by a now-retired Navy Chaplain against the Secretary of the Navy ("the Secretary"). Before the Court are several motions made by both parties: 1) the Secretary's Motion to Dismiss for Lack of Jurisdiction and Motion for Summary Judgment (ECF Nos. 35, 42) and Plaintiff Furniss Harkness' ("Harkness") Response (ECF No. 46); 2) Harkness' Motion to Strike Defendant's Motion to Dismiss and Summary Judgment (ECF No. 44) and the Secretary's Response (ECF No. 52); 3) Harkness' Motion to Stay Proceedings to Conduct Discovery (ECF No. 47), the Secretary's Response (ECF No. 61) and Harkness' Reply (ECF No. 63); 4) Harkness' Motion for Partial Summary Judgment (ECF Nos. 36-40), the Secretary's Response (ECF No. 49) and Harkness' Reply (ECF No. 57); and 5) Harkness' Motion for Leave to File Supplemental Declaration (ECF No. 71) and the Secretary's Response (ECF No. 72). The Court held a hearing on the various motions on December 18, 2015. (ECF No. 70.) Based on the following analysis, the Court **GRANTS** the Secretary's Motion to Dismiss and Motion for Summary Judgment

(ECF Nos. 35, 42), **DENIES** Harkness' Motion to Strike (ECF No. 44), **DENIES** Harkness'

Motion to Stay (ECF No. 47), **DENIES** Harkness' Motion for Partial Summary Judgment (ECF

Nos. 36-40), and **DENIES** Harkness' Motion for Leave to File Supplemental Declaration (ECF

No. 71).

<u>STATEMENT OF THE CASE</u>

The bulk of this case, while containing an extensive and convoluted history between

Harkness and the Navy, may be distilled into a simple series of requests and denials. Harkness

has continually requested a promotion, and the Navy has continually denied that request, in one

way or another. Harkness now turns to the Court to review those denials. The history of

Harkness' extensive litigious relationship with the Navy has been detailed in numerous orders

and opinions. <u>See</u>, <u>e.g.</u>, <u>Harkness v. United States</u>, 727 F.3d 465, 468 (6th Cir. 2013). The

following is a brief recitation by way of background.

Harkness entered active duty as a Navy Chaplain endorsed by a non-liturgical Christian

church, the Disciples of Christ, in March 1987. (Amend. Comp. ¶ 9, ECF No. 15.) Navy

Chaplains are subject to the same statutory promotion policies as all other officers. <u>See</u> 10

U.S.C. § 611 *et seq.* (governing active duty officer promotions); § 14101 *et seq.* (governing

reserve officer promotions). The Navy's personnel system utilizes annual promotion boards to

recommend officers for advancement in rank. Promotion boards report their recommendations

to the Secretary of the Navy, who in turn forwards them to the President. Officers not chosen by

a promotion board may challenge the decision pursuant to an administrative review scheme. <u>See</u>

10 U.S.C. §§ 628, 14502. Under this scheme, officers who seek to challenge a promotion

board's decision must petition the Secretary to convene a special selection board ("SSB") to

determine whether they should have been promoted. As for reserve officers, if the Secretary

declines to convene an SSB, the non-promoted officer may file suit in federal court to determine

if the Secretary's decision not to convene an SSB was arbitrary, capricious or contrary to law.

See 10 U.S.C. § 14502(h)(1). If the Secretary does convene an SSB, and the SSB determines

that the original promotion board's decision was appropriate, the non-promoted officer may file

suit in federal court to determine whether the SSB's decision was contrary to law or involved

material error of fact or material administrative error. 10 U.S.C. § 14502(h)(2).

After nearly a decade of going through this process, Harkness now raises four distinct

claims:[1] first, he claims that he was denied various duties and assignments throughout his career

in retaliation for his litigious relationship with the Navy; second, he challenges the Secretary's

decision to not convene two SSBs – a second SSB in 2012 (to review the 2012 SSB that

reviewed the Fiscal Year ("FY") 2007 Promotion Board's recommendation) and an SSB in 2013

(to review the FY 2014 Promotion Board's recommendation) – as contrary to law; third, he

challenges the Navy's general promotion practices as unconstitutional under the Establishment

Clause and the Due Process Clause; and fourth, he challenges the actions of his 2012 SSB as

contrary to law.

As to the first claim, that Harkness has been denied various duties and assignments over

his career in retaliation for his litigation against the Navy, the Secretary seeks dismissal for lack

of subject matter jurisdiction, asserting that Harkness' claim is non-justiciable. Harkness filed a

response to the Secretary's Motion to Dismiss, as well as a Motion to Strike the Secretary's

Motion to Dismiss. In his response, Harkness asserts that his claim is in fact justiciable, pursuant

to Supreme Court precedent, and relies on the fact that other courts have remedied similar

claims. In his Motion to Strike, Harkness argues that the Secretary's Motion to Dismiss should

---

[1] The claims are numbered as they are addressed by the Court, not as they were pled in the
Complaint.

be stricken because the Secretary merely reiterates arguments from previous filings.  As is discussed below, the Court finds that Harkness' first claim is the type of military personnel decision which is not to be reviewed by a federal court, and is thus non-justiciable.  Therefore, the Court **GRANTS** the Secretary's Motion to Dismiss Harkness' retaliation claim and **DENIES** Harkness' Motion to Strike.

As to the second claim, regarding the Secretary's denials of Harkness' two SSB requests, the Secretary seeks summary judgment without further discovery.  The Secretary posits that this claim should be adjudicated on the administrative record, similar to an agency action reviewed under the APA.  In response, Harkness filed a Motion to Stay to allow for discovery beyond the administrative record, stating that this claim should not be confined to the administrative record, and, moreover, that there is evidence outside of the administrative record which corroborates his claims.  As discussed below, the Court agrees with the Secretary's position, and therefore **DENIES** Harkness' Motion to Stay.  Based on the administrative record, the Court **GRANTS** the Secretary's Motion for Summary Judgment finding that the Secretary's denials of Harkness' SSB requests (for a second SSB in 2012 and a first one in 2013) were not arbitrary, capricious or contrary to law.

As to the third claim, regarding Harkness' constitutional challenge to the Navy's promotion board procedures under the Establishment Clause and Due Process Clause, the Secretary seeks dismissal for lack of subject matter jurisdiction, asserting that Harkness has failed to exhaust his administrative remedies.  In response, Harkness relies on this Court's previous holding that he exhausted his administrative remedies in raising his Establishment Clause challenge to the Navy's promotion board procedures in both of his SSB requests that are currently before the Court.  (<u>See</u> ECF No. 29.)  The Court agrees with Harkness regarding the

exhaustion issue and stands by its original ruling.  Harkness raised his constitutional challenges to the Navy's promotion board procedures in both of his SSB requests, and they are therefore not barred for failure to exhaust administrative remedies.  Harkness' Partial Motion for Summary Judgment focuses exclusively on these claims.  As an initial question, the Court finds that these claims may only be considered by the court vis-à-vis the exclusive administrative review scheme enumerated by 10 U.S.C. § 14502(h)(1)-(2).  Under that scheme, the Court finds that neither the promotion board procedures nor the Secretary's decisions violated any constitutional provisions.  Accordingly, the Court **DENIES** Harkness' Motion for Partial Summary Judgment.

As to the fourth claim, regarding the actions of the 2012 SSB that was convened, the Court is also confined to the administrative record pursuant to § 14502(h)(2), and **GRANTS** the Secretary's Motion for Summary Judgment, finding that the actions of the 2012 SSB were not contrary to law.

Lastly, Harkness filed a Motion for Leave to File Supplemental Declaration following the hearing on the above-referenced motions.  Harkness' counsel attempts to include a declaration by Harkness regarding "new and highly relevant material" in support of his opposition to the Secretary's Motion to Dismiss and Summary Judgment.  (ECF No. 71 at 5.)  Harkness has already filed a response to the Secretary's Motion to Dismiss and Summary Judgment, a Motion to Strike the Secretary's Motion, and a Motion to Stay the Court's ruling on the Secretary's Motion.  Within each of these filings, Harkness has made merits-based arguments in opposition to the Secretary's Motion.  It is not appropriate for a party to submit multiple filings under different headings for the purpose of circumventing the Court's page limits on responses.  Accordingly, Harkness' Motion for Leave to File Supplemental Declaration is **DENIED**.

<u>ANALYSIS</u>

I.      <u>HARKNESS' FIRST CLAIM: RETALIATION RELATING TO VARIOUS DUTIES</u>

During his career, Harkness alleges he was denied various duties and assignment in retaliation for his litigation against the Navy.  The Secretary challenges Harkness' standing to raise this claim based on three grounds: first, the claim involves military personnel decisions which are non-justiciable (ECF No. 34-1 at 19); second, Harkness has not demonstrated injury-in-fact or redressability (ECF No. 34-1 at 24); and, third, because Harkness is now retired from the Navy, his claim is moot (ECF No. 52 at 11).  Harkness responded to the Secretary's positions as follows: first, military personnel decisions are justiciable so long as the attendant claim arises from a violation of the law, the Constitution or the military's regulations (ECF No. 46 at 23-24); and, second, Harkness suffered an injury-in-fact because the denial of his placement affected his candidacy for promotion, and the Court is capable of redressing this wrong by requiring the Navy to "provide notice of retaliation to those reviewing Harkness' record." (ECF No. 46 at 25).[2] The Court finds, pursuant to the forthcoming analysis, that Harkness' retaliation claim relating to assignments or duties is non-justiciable.  Accordingly, the Court need not reach questions of injury in fact, redressability or mootness.

Harkness alleges that he has been denied various duties as a result of retaliation: duties as a recorder on Navy CHC selection boards, a special assignment to work on the 2010 National Boy Scout Jamboree, active duty Reserve training at Naval Region Europe, the loss of an assignment he had been granted by the APPLY board, and several other APPLY board assignments he later applied for.  (ECF No. 15 at 15-16.)  These assignments and duties are not promotions, and they are not accompanied by increases in pay or official status.  Therefore, the

---

[2] Harkness failed to address the argument that his claim of retaliation is moot based on his retirement from the Navy.

Secretary avers that, in accordance with Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953), the Court is forbidden from reviewing these particular personnel decisions. (ECF No. 34-1 at 19-24.) Harkness rebuts that the Navy has misinterpreted the holding in Orloff, and that "Orloff's proper holding is [that] courts will not become involved in personnel decisions as long as the military is acting within the law, the Constitution and its own regulations." (ECF No. 46 at 24.) Harkness is correct that some military personnel decisions are susceptible to judicial review, see Antonellis v U.S., 723 F.3d 1328 (Fed. Cir. 2013); however, Orloff squarely places military assignments *of duties* outside the scope of judicial review, even when those assignments may run afoul of the Constitution, which is exactly the basis of Harkness' first claim.

In Orloff, a doctor conscripted into the army challenged his assignment as a lab technician, averring that he should have been assigned a position commensurate with his medical training because he was conscripted under the "medical and allied specialist categories." Orloff, 345 U.S. at 85-87. The Army initially argued that the medical and allied specialist statutory scheme did not prohibit the Army from placing conscripted doctors in otherwise non-medical positions. Id. at 87. The Army then changed its position on writ to the Supreme Court. Id. (noting "the Government's concession" that doctors conscripted under this statutory scheme must be given roles apposite of their positions as doctors). The Court agreed with the Army's concession, reasoning that "separat[ing] particular professional groups from the generality of the citizenship and render[ing] them liable to military service only because of their expert callings and, after induction, [] divert[ing] them form [sic] the class of work for which they were conscripted would raise questions not only of bad faith but of unlawful discrimination." Id. at 88.

However, the Court found that, while a conscripted doctor was required to be placed in a medically-related position, determining the specific duties assigned to any doctor was beyond the Court's purview.  Id.  For instance, if an obstetrician had been conscripted, the Army "might have limited use for his specialty," but he should not be able to refuse other service within the general medical category.  Id.  Ultimately, "[e]ach doctor in the Army cannot be entitled to choose his own duties, and the Government concession does not extend to an admission that duties cannot be prescribed by the military authorities or that they are subject to review and determination by the judiciary."  Id.  The Court elaborated upon the proper deferential relationship between the courts and the military as follows:

> We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men.  But judges are not given the task of running the Army . . . Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

Id. at 94.  Orloff does not create an impermeable firewall between the judiciary and the military. It does, however, prevent the judiciary from reviewing assignments of duties within the military, making those decisions non-justiciable.

In the hearing before this Court, Harkness explained that the positions he asserts he was denied were not promotions, but rather assignments of various duties.  Harkness' challenge is not akin to the one in Orloff, involving a general category that served as the very basis for the service member's conscription.  Rather, for Harkness, while the different duties may have impacted his candidacy for promotion, the decisions at issue are the type of intra-military ones that are outside this Court's jurisdiction.  Accordingly, the Secretary's Motion to Dismiss

Harkness' claim of retaliation on the basis that he was denied various duties is hereby

**GRANTED** and that claim is **DISMISSED WITH PREJUDICE.**

II.    DISCOVERY QUESTIONS AS TO HARKNESS' SECOND, THIRD AND FOURTH
       CLAIMS

Generally, conducting discovery is essential to either substantiating or surmounting

claims raised during the course of a lawsuit.  Consequently, Harkness has submitted a Motion to

Stay the Court's ruling on the Secretary's Motion for Summary Judgment, arguing that no

discovery has been conducted and it would therefore be premature to make a ruling at this time.

A court may defer ruling on a motion for summary judgment to "allow time to obtain affidavits

or declarations or to take discovery" when facts are unavailable to the nonmovant.  Fed. R. Civ.

P. 56(d).  Pursuant to Rule 56(d), Harkness avers that discovery is necessary to produce the

following facts that are currently unavailable to him: 1) the objectivity of CAPT Poole and

RADM Horn, both members of the 2012 SSB, whom Harkness alleges retaliated against him; 2)

the actual job duties of CAPT Wildhack whose membership on the FY 2014 Promotion Board,

Harkness alleges, ran afoul of the Navy's policies; and 3) the alleged bad faith of the Secretary.[3]

(ECF No. 47.)

In response to Harkness' Motion to Stay, the Secretary argues that Harkness' remaining

claims are exclusively controlled by 10 U.S.C. §14502, which limits judicial review to the

administrative record and thus forecloses any discovery.  (ECF No. 61 at 4.)  The Court, for the

forthcoming reasons, agrees with the Secretary that discovery of information outside of the

administrative record for Harkness' remaining claims is not permitted under the exclusive review

scheme created by Congress in § 14502(h)(1) and (h)(2).

---

[3] Plaintiff also seeks discovery as to his claim of retaliation regarding his denial of various duties
and assignments.  Because Plaintiff does not have standing to assert that claim, however, the
Court does not consider that discovery request.  See Section I, *supra*.

A.  Discovery Regarding the Secretary's SSB Decisions Under 10 U.S.C. § 14502(h)(1)

Harkness' second claim challenges the Secretary's decisions to not convene a Second SSB in 2012 or an SSB in 2013.  The provision that controls that review, § 14502(h)(1), states the following:

> A court of the United States may review a determination by the Secretary concerned under subsection (a)(1), (b)(1), or (e)(3) not to convene a special selection board.  If a court finds the determination to be arbitrary or capricious, not based on substantial evidence, or otherwise contrary to law, it shall remand the case to the Secretary concerned, who shall provide for consideration of the officer or former officer by a special selection board under this section.

Nothing in that text expressly limits judicial review of the Secretary's determination to the administrative record.  That fact alone could support the conclusion that discovery beyond the administrative record is appropriate.  For instance, as to the Administrative Procedure Act ("APA"), the Sixth Circuit noted that "[t]he APA *requires* courts to 'review the whole record or those parts of it cited by a party'" and, therefore, courts must "confine their review to the 'administrative record.'"  Sierra Club v. Slater, 120 F.3d 623, 638 (6th Cir. 1997) (emphasis added) (citing 5 U.S.C. § 706).  Here, under a different statutory scheme, there is no identical mandate requiring the Court to limit its review to the administrative record.  See 10 U.S.C. § 14502.  Moreover, there is no authority that the APA applies to this specific statutory scheme.  See Gilbert v. James, 2015 WL 5611340, at *7 (D.D.C. Sept. 22, 2015) (finding that the APA does not apply to § 628, the sister statute applicable to active service military).  While those facts may walk the Court in the direction of permitting discovery beyond the administrative record, the general purpose of the statute and the remaining text both support the conclusion that Congress intended judicial review of the Secretary's determinations to be limited to the administrative record.

First, the Sixth Circuit has held that 10 U.S.C. § 14502 manifests Congress' intent to create a comprehensive and exclusive scheme for judicial review of the Secretary's decisions regarding the Navy's promotion policies.  See Harkness v. United States, 727 F.3d 465, 471 (6th Cir. 2013) (hereafter "Harkness I").  In Harkness I, the Sixth Circuit determined that the plaintiff had not exhausted his administrative remedies when he raised his constitutional claims for the first time in his complaint in federal court.  The court required the plaintiff to present all of his claims to the Secretary in such a manner as to "give [the Secretary] a meaningful opportunity to respond appropriately should [the Secretary] choose to do so."  Id.  This meaningful opportunity to respond permits "the agency … to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."  Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 112 (1992)).  The Sixth Circuit's emphasis on allowing the Secretary every opportunity to correct his own mistakes necessarily depends on all evidence supporting the claims being within the administrative record.  Therefore, it appears that the policy of the statute would be undermined if a court had free-wheeling authority to order discovery of information that was not before the Secretary when he made his decision.

Second, two textual reasons favor limiting judicial review of the Secretary's decision to the administrative record: first, the statute calls for a district court to "review" the Secretary's decision; and, second, the statute orders the district court to remand the decision to the Secretary if the court finds the decision was not based on substantial evidence.  As to the first point, the statute requires a district court to "*review* [the] determination by the Secretary," 10 U.S.C. § 14502(h)(1) (emphasis added), and not make its own, independent assessment of whether the plaintiff's request for an SSB was meritorious.  In Wilson v. C.I.R., 705 F.3d 980, 988 (9th Cir. 2013), the Ninth Circuit held that a court was supposed to "consider evidence outside the

administrative record," to wit, permit discovery, when the statute called for the court to "determine" the appropriate remedies for the plaintiff and not simply "review" the agency's action. See also Commissioner v. Neal, 557 F.3d 1262 (11th Cir. 2009) (holding the same). Here, where the court is asked to *review* the Secretary's determination, and not *determine* the plaintiff's remedies independent of the agency's decision, that review should be limited to the record before the Secretary; otherwise, the court becomes the arbiter of the plaintiff's original petition and not the reviewer of the Secretary's determination.

As to the second textual point, the statute requires the court to remand the case to the Secretary if the court finds that the Secretary's decision was "not based on substantial evidence." 10 U.S.C.A. § 14502(h)(1). This is a familiar standard used in administrative law across both the state and federal level, and it universally requires the review to be limited to the administrative record. E.g., Allentown Mack Sales & Serv., Inc. v. N.L.R.B., 522 U.S. 359, 366-67 (1998) ("We must decide whether that conclusion is supported by substantial evidence *on the record* as a whole. Put differently, we must decide whether on this record it would have been possible for a reasonable jury to reach the [agency]'s conclusion.") (emphasis added); see also Admin. L. & Prac. § 9:24 (3d ed.) (cataloging state approaches to the substantial evidence test and noting that, under the test, the "administrative findings [are] assumed to be 'prima facie true and correct.'" (citation omitted)). There is a presumption that similar language used across different statutes is intended to have the same meaning. Jacob Scott, Codified Canons and the Common Law of Interpretation, 98 Geo. L.J. 341, 365 (2010). Therefore, it is safe to assume, from a textual inquiry, that the substantial evidence language used in this statute reflects Congress' intent to limit judicial review of the Secretary's determinations to the administrative record.

Furthermore, the purpose of the substantial evidence test buttresses this conclusion. Judge Friendly opined that, because of the "substantial evidence" test,

> There will continue to be cases of rulemaking in which, in order to show that its action is supported by substantial evidence or even to avoid characterization of its action as "arbitrary and capricious," *the agency must provide* "some mechanism for interested parties to introduce adverse evidence and criticize evidence introduced by others." Just what mechanism must be provided will depend on the interests at stake, the complexity of the issue, and the usefulness of the particular mechanism as weighed against its adverse effects.

"Some Kind of Hearing", 123 U. Pa. L. Rev. 1267, 1314 (1975) (emphasis added). Here, it is clear that Congress intended for the Navy, and not the court, to provide the mechanism to introduce and dispute evidence; otherwise, Congress would not have asked the Court to review (not determine) the merits of the plaintiff's claim, and then to remand (not provide an alternative remedy) if the evidence is found to be insubstantial. Remanding the case works as a compromise to both parties: it permits further investigation and production regarding a plaintiff's claims while also giving the Navy the opportunity to manage that investigation in an efficient and effective way. For the aforementioned reasons, the Court concludes that judicial review of the Secretary's decisions not to convene an SSB to review the 2012 SSB and not to allow for an SSB to review the FY 2014 Promotion Board under 10 U.S.C.A. § 14502(h)(1) must be limited to the administrative record that was before the Secretary.

B. Discovery Regarding the Actions of an SSB Under 10 U.S.C. § 14502(h)(2)

The Court now addresses whether judicial review of an already-constituted SSB, the basis of Harkness' third claim, is to be limited to the administrative record. The provision that controls that review, 10 U.S.C. §14502(h)(2), reads as follows:

> If a court finds that the action of a special selection board which considers an officer or former officer was contrary to law or involved material error of fact or material administrative error, it shall remand the case to the Secretary concerned,

13

> who shall provide the officer or former officer reconsideration by a new special
> selection board.

This mandate is distinct from § 14502(h)(1) (the provision guiding review of the Secretary's denial of a request for an SSB) because it does not require a court to "review" the actions of a special selection board (or the Secretary), and, further, it omits the familiar "arbitrary or capricious" and "substantial evidence" bases for the review. Despite these differences, it appears that the purpose of this provision parallels that of § 14502(h)(1) because it calls for the court to remand the case to the Secretary. In fact, 10 U.S.C. § 14502(g) explicitly proscribes a court from "grant[ing] *any* relief" (emphasis added) to an officer who has not already been selected for promotion by an SSB, except to remand the officer's claim back to the Secretary. The fact that the Court may only remand the claim back to the Secretary evidences Congress' intent that the agency have "an opportunity to correct its own mistakes" regarding the actions of an SSB. See Harkness I, 727 F.3d at 471.

Despite that intent, it is hard to understand why Congress omitted the "arbitrary or capricious" and "substantial evidence" tests, as well as any language requiring a court to "review" the SSB's actions in (h)(2), when Congress did include those provisions in (h)(1). See Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 185-86 (1995) (Justice Scalia admonishing the lack of clarity in the drafting of a different statute, remarking that "it is quite impossible to make complete sense of the provision.")

> As one court has aptly put it, '[n]ot every silence is pregnant.' In some cases,
> Congress intends silence to rule out a particular statutory application, while in
> others Congress' silence signifies merely an expectation that nothing more need
> be said in order to effectuate the relevant legislative objective. In still other
> instances, silence may reflect the fact that Congress has not considered an issue at
> all. An inference drawn from congressional silence certainly cannot be credited
> when it is contrary to all other textual and contextual evidence of congressional
> intent.

<u>Burns v. United States</u>, 501 U.S. 129, 136 (1991) (quoting <u>Illinois Dep't of Public Aid v.</u>

<u>Schweiker</u>, 707 F.2d 273, 277 (7th Cir. 1983)).  These omissions appear to be pregnant ones,

considering that the omitted language *is* included in 10 USC § 628(g)(2) -- the sister statute

pertaining to review of SSB actions in the active duty military context.

> In that sister statute, a court,

> **[R]eview[s]** the action of a special selection board . . . **or an action of the
> Secretary of the military department concerned on the report of such a
> board**.  In any such case, a court may set aside the action only if the court finds
> that the action was **(A) arbitrary or capricious; (B) not based on substantial
> evidence**; (C) a result of the material error of fact or material administrative error;
> or (D) otherwise contrary to law.

10 USC § 628(g)(2)(A)-(D) (emphasis added).  The bolded language in the active-duty statute is

language that has been omitted from the reserve-status statute, with the following effects on

judicial review of SSBs: first, in the reserve context, the statute does not call for the Court to

"review" the actions of the SSB; second, for reserves, there is no provision permitting review of

the Secretary's decision pertaining to an already-convened SSB; and third, as to reserves, the

provision omits the two bases of review that most obviously limit a court to the administrative

record (arbitrary or capricious and substantial evidence).  This statute, § 14502, provides the

*exclusive* scheme for judicial review of SSB actions in the reserve duty, meaning that none of the

omissions in § 14502(h)(2) are covered by a complementary statute or review scheme.  <u>See</u>

<u>Juffer v. Caldera</u>, 138 F. Supp. 2d 22, 24 (D.D.C. 2001) ("there is very little that can be added to

clarify a legislative pronouncement already this clear" that § 14502 creates an exclusive review

scheme); <u>see</u> <u>also</u>, <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 903 (1988) (noting that the APA

"does not provide additional judicial remedies in situations where the Congress has provided

special and adequate review procedures.").

Although it is unclear *why* judicial review of SSBs for those serving on reserve duty is more limited than judicial review of SSBs for active duty personnel, the court is nonetheless bound by the text of § 14502 and its more limited review scheme. The next inquiry is whether the more limited review cuts in favor of discovery beyond the administrative record or not: the Court finds that it does not. Despite the fact that the reserve duty statute does not include the specific term "review," it is manifestly the Court's duty to *review* the actions of the SSB rather than independently determine the merits of an application to the SSB. See Richey v. United States, 322 F.3d 1317, 1327 (Fed. Cir. 2003) ("The reluctance of the judiciary to review promotion actions of selection boards is rooted not only in the court's incurable lack of knowledge of the total grist which the boards sift, but also in a preference not to meddle with the internal workings of the military.").

Furthermore, the remedy for an infraction remains to remand the case back to the Secretary. This scheme permits the Secretary to correct mistakes that were made, without having to open the doors of judicial discovery. It allows, as Judge Friendly put it, for the agency to determine the mechanism by which an aggrieved party and the agency may resolve their dispute. With a strong emphasis on the limited role a court may play in this scheme, the statute places the burden on the plaintiff to present his claims fully to the Secretary in the first instance, and a court must rely on that administrative record. For those reasons, the Court holds that review of SSB actions under §14502(h)(2) should also be limited to the administrative record.

C. Exceptions to Limiting Review to the Administrative Record

As with all rules, there are exceptions. Although the Court is generally limited to reviewing the administrative record for a claim under §14502(h)(1) or (h)(2), the Sixth Circuit has stated that supplementation of the administrative record is justified "when an agency

deliberately or negligently excludes certain documents, or when the court needs certain 'background information' in order to determine whether the agency considered all of the relevant factors." Sierra Club v. Slater, 120 F.3d 623, 638 (6th Cir. 1997) (citing James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1095 (D.C.Cir.1996)). "Courts have suggested that in order to justify supplementation, a plaintiff must make a 'strong showing' of bad faith." Sierra Club v. Slater, 120 F.3d 623, 638 (6th Cir. 1997) (citation omitted). Here, Harkness argues that the Secretary's determinations were based on an insufficient investigation into the "constitutionality or legality of the challenged procedures, or whether the asserted facts [were] true." (ECF No. 47 at 2.) Harkness requests discovery into the "objectivity of RADM Horn and CAPT Poole" relating to his retaliation claim for the 2012 SSB; "the status of CAPT Wildhack" to determine whether CAPT Wildhack was properly on the FY 2014 Promotion Board; and general discovery into the "validity of Plaintiff's allegations of retaliation and damage to his career[.]" (ECF No. 47 at 2-3.) The Court finds that Harkness' arguments do not support granting discovery outside of the administrative record.

As to his first request, regarding the objectivity of RADM Horn and CAPT Poole, Harkness opines that discovery is appropriate because he "can produce a witness who will testify they made statements indicating they were on the SSB to defend the Chaplain Corps . . . not evaluate his record objectively and honestly." (ECF No. 47 at 2.) Specifically, Harkness attests that he knows of an individual who overheard CAPT Poole and RADM Horn state that "we are here to protect the interests of the defendant" when questioned why they were at the location where Harkness' SSB was held. Harkness avers that the "statement can have only one meaning: they were there to make sure [he] was not selected [for promotion]" because Harkness states that both individuals knew Harkness was involved in litigation with the Secretary and he believes

there were no other SSBs being held at the same location.  (ECF No. 47-2 at 6.)  Despite the innumerable reasons why this claim is insufficient to open discovery -- the hearsay issues, the tenuous and unclear nature of the allegedly overheard statement, and the fact that this claim was first raised in Harkness' Response to the Secretary's Motion for Summary Judgment and not to the Secretary in Harkness' request for an SSB -- the Secretary has provided a legitimate, non-retaliatory explanation for such a statement, if the statement was even made.  (ECF No. 61 at 10.)  The Secretary explained that SSB and promotion board membership is confidential until the work of the board is complete; accordingly, a response to an inquiry asking why a member of one of these boards is present in a location would customarily be "to support the Secretary." (ECF No. 61 at 10.)  This first request, accordingly, does not support a grant of discovery beyond the administrative record.

Harkness' second request, regarding the status of CAPT Wildhack, fails because there is no cognizable claim attendant to the request.  Harkness contends that CAPT Wildhack, who Harkness admits is not and was not a detailer, performed functions akin to a detailer, which would prohibit his placement on the SSB.  However, the Secretary's regulation proscribes those with the job title of "detailer" from maintaining membership on a promotion board, but it does not proscribe individuals who may have functions that overlap with Detailer functions from such membership.  See SECNAVINST 1401.3A.4(g).  In Sierra Club, the court found that because "the plaintiffs [] failed to point to a single factor that would suggest the administrative record was inadequate for an assessment of their claims," the district court did not abuse its discretion in denying the plaintiff's discovery requests.  Sierra Club, 120 F.3d at 639.  Here, Harkness' request is denied because CAPT Wildhack's job duties could not disqualify him from

membership on the SSB, meaning the administrative record could not have been deficient in this regard.

As to Harkness' third request, regarding the validity of his claims of retaliation, Harkness does not have standing to raise his general claims of retaliation and therefore may not conduct discovery into those claims. In sum, Harkness' three requests for discovery are based on his disagreement with the Secretary's ultimate determination and not based on any defect in the record or lack of investigation by the Secretary. Accordingly, Harkness' Motion to Stay is **DENIED**, and the Court will review the Secretary's Motion for Summary Judgment based on the administrative record.

III.     HARKNESS' SECOND CLAIM: THE SECRETARY'S DECISIONS TO NOT CONVENE AN SSB IN 2012 AND 2013

The Secretary seeks summary judgment on the first two counts of Harkness' Complaint.[4] Harkness' first two counts both challenge the promotion board procedures, but on different bases: the first count challenges the Secretary's denials of Harkness' requests for SSBs as arbitrary, capricious and contrary to law, and the second count alleges that the promotion board procedures violate constitutional protections. (ECF No. 15 at 11.) The Court, for the following reasons, considers both counts pursuant to §14502.

A.  Standard of Review

The parties' memoranda call the current motion one for summary judgment, however, the Court does not apply a traditional summary judgment standard to a case involving review of agency action. "In a case involving review of a final agency action under the APA . . . the

---

[4] For clarification, Counts 1 and 2 of Harkness' Complaint are described as Harkness' second, third and fourth claims in the above analysis. That is, a challenge to the Secretary's determinations, a challenge to the Navy's selection board procedures under the Establishment Clause and Due Process Clause, and a challenge to the actions of the 2012 SSB.

standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." N. Carolina Fisheries Ass'n, Inc. v. Gutierrez, 518 F. Supp. 2d 62, 78-79 (D.D.C. 2007). Although this is not an APA case, the Court borrows the relevant standards from the APA given the parallel language used in the APA and § 14502(h), as well as the dearth of case law on § 14502(h).

"A court conducting judicial review under the APA does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did. Thus, in an APA claim, summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Hoffler v. Hagel, 2015 WL 4740692, at *7 (E.D.N.C. Aug. 10, 2015) (internal citations and quotation marks omitted); see also Northwest Motorcycle Ass'n v. United States Dep't of Agriculture, 18 F.3d 1468, 1472 (9th Cir.1994) ("[T]his case involves review of a final agency determination under the [APA]; therefore, resolution of th[e] matter does not require fact finding on behalf of this court. Rather, the court's review is limited to the administrative record.").

> A motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure . . . makes no procedural sense when a district court is asked to undertake judicial review of administrative action. Such a motion is designed to isolate factual issues on which there is no genuine dispute, so that the court can determine what part of the case must be tried to the court or a jury. Agency action, however, is reviewed, not tried. Factual issues have been presented, disputed, and resolved; and the issue is not whether the material facts are disputed, but whether the agency properly dealt with the facts.

Lodge Tower Condo. Ass'n v. Lodge Properties, Inc., 880 F. Supp. 1370, 1374 (D. Colo. 1995) aff'd, 85 F.3d 476 (10th Cir. 1996) (internal citation omitted). Here, Harkness challenges the

Secretary's denial of his two requests for SSBs and the actions of the 2012 SSB.[5] (ECF No. 15 at 11.) Accordingly, this Court will review the Secretary's denials and decide whether, based on the administrative record, they were arbitrary, capricious or otherwise contrary to law,[6] 10 U.S.C. §14502(h)(1), and will review the actions of the 2012 SSB to determine whether they were contrary to law under 10 U.S.C. §14502(h)(2).[7]

"An agency determination is arbitrary and capricious if there is *no* evidence to support the decision, or it is based on an improper understanding of the law." Charter Twp. of Van Buren v. Adamkus, 188 F.3d 506 (6th Cir. 1999) (emphasis added). A court gives such great deference to the agency when reviewing its actions as being arbitrary or capricious because the agency has expertise in the field in which it is operating. As to constitutional challenges, however, the court does not grant deference to the agency's actions because the court has constitutional expertise. See Porter v. Califano, 592 F.2d 770, n.15 (5th Cir. 1979) ("Independent judicial judgment is especially appropriate in the First Amendment area. Judicial deference to agency fact-finding and decision-making is generally premised on the existence of

---

[5] While Plaintiff has not included a count specifically addressing the actions of the 2012 SSB as a challenge under §14502(h)(2), and instead has focused his opposition on the Secretary's denial of his second request for an SSB, which would fall under §14502(h)(1), the Court nonetheless construes from the entirety of his Complaint that Plaintiff intended to also independently challenge the actions of the 2012 SSB under §14502(h)(2).

[6] The Court may also remand if the Secretary's decision was based on insubstantial evidence; however, Plaintiff did not plead that the Secretary's decision should be remanded on that ground. Although Plaintiff arguably raises this basis in his Motion to Stay (as incorporated in his Response to the Secretary's Motion for Summary Judgment) (ECF No. 46 at 7-8), it is improper for the Court to permit Plaintiff to expand his claim in his response to summary judgment. See Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment.").

[7] The statute provides that a court may review SSB actions to determine if they were based on a material error of fact or material administrative error, however, Plaintiff has not made a challenge under either of these bases of review. See §14502(h)(2).

agency expertise in a particular specialized or technical area. But in general, courts, not agencies, are expert [sic] on the First Amendment.").

Based on review of the administrative record, the Court finds that neither of the Secretary's determinations were arbitrary, capricious or contrary to law, and the actions of the 2012 SSB were not contrary to law.

B.  The Secretary's Determinations Under §14502(h)(1)

Harkness requested that the Secretary convene two SSBs – one to review the 2012 SSB and one to review the FY 2014 Promotion Board – and the Secretary declined both requests.  In his Complaint, Harkness pleads that both of those denials were arbitrary, capricious and contrary to law for two reasons: both boards at issue were convened "contrary to [the Secretary's] regulations, instructions and practices and [the Secretary] failed to provide a board of neutral and unbiased board members; and [the Secretary] has used chaplain selection board procedures which violate the Establishment Clause and allow denominational preferences, prejudices, and/or religion to become relevant in promotion board proceedings." (ECF No. 15 at 11.)  To succeed on his Motion, the Secretary must demonstrate, through citation to the administrative record, that his decisions were not arbitrary or capricious, or otherwise contrary to law.  10 U.S.C. §14502(h)(1).  The Court finds that the Secretary's decisions were not arbitrary or capricious because there is evidence in the administrative records to support the decisions, and the decisions were not contrary to law.

C.  The Secretary's Denial of a Second 2012 SSB

On October 18, 2012, Harkness submitted a formal request to the Secretary to convene a second SSB to review Harkness' 2012 SSB.  (ECF No. 42-1.)  That request stated that "[a] review of the [2012] SSB's precept shows several significant problems which guaranteed

[Harkness] would not receive fair, unbiased consideration." (ECF No. 42-1 at 5.) Despite the

numerous assertions made by Harkness as to why the 2012 SSB was not properly convened, the

Secretary's decision to not convene a second SSB could not have been arbitrary, capricious or

contrary to law for one simple reason: there is no statutory authority for the Secretary to convene

a second SSB to review the actions of an SSB. The mechanism to review the actions of an SSB

is to file a claim in court. See 10 U.S.C. §14502(h)(2) (providing for *judicial* review of an SSB).

The Secretary's Action Memo appropriately reflects that fact:

> Under Section 628 of Title 10 U.S. Code, an SSB may only be granted for
> a person who either is not considered, or is considered but not selected, by a
> promotion board. Paragraph (k) of this same section narrowly defines a
> promotion board as a selection board convened by the Secretary of a military
> department under section 573(a) or 611(a) of this Title. This section does not
> authorize approval of an SSB for a complaint of material unfairness arising from
> an SSB, but only from a promotion selection board. Likewise, section 14502 of
> Title 10 authorizes the convening of a special promotion selection board in cases
> of an officer who was eligible for promotion and considered for selection for
> promotion by a selection board, but not selected. The plain language construction
> of this section distinguishes between a selection board that does not select the
> officer and a special selection board that is convened as a result of non-selection.
>
> . . . Pursuant to this authority, SECNAVINST 1420.1B defines special selection
> boards requested under either section 628 or 14502 of Title 10 as only limited to
> cases involving promotion selection boards, which it limits to boards convened
> under sections 611 and 14101 of Title 10. Thus, the regulation, like the statutes,
> does not envision the granting of an SSB for an SSB. Additionally, an
> examination of other statutes (e.g., 1558) failed to reveal any alternative means of
> granting a second SSB to review a previous SSB.

(ECF No. 42-1 at 3.) On review of the statute and its plain language, the Court agrees with the

Secretary that the proper mechanism for addressing a faulty SSB is to file a claim in court rather

than to petition the Secretary for a second SSB. There is no statutory authority to hold

otherwise.

Alternatively, Harkness argues that the 2012 SSB was *void ab initio*, "meaning it never

happened," in an attempt to circumvent the absence of statutory authority for his position. This

argument has no merit, and the Court will not pretend that the 2012 SSB never existed. See Harkness v. United States, 727 F.3d 465, 472 (6th Cir. 2013) ("Harkness's argument that § 14502 does not apply to his claim because the 2007 board was 'void ab initio' is a red herring."). The Secretary's denial of Harkness' request for a second SSB is not arbitrary, capricious or contrary to law. Accordingly, the Secretary's Motion for Summary Judgment on this claim is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.

D. <u>The Secretary's Denial of an SSB for the FY 2014 Promotion Board</u>

Next, Harkness challenges the Secretary's denial of Harkness' request for an SSB to review his FY 2014 Promotion Board. Harkness asserts four separate allegations in his request to the Secretary, which are also in his Complaint, explaining why he contends that the FY 2014 Promotion Board did not provide him with a fair opportunity for promotion: first, CAPT Wildhack's presence on the promotion board violated the Navy's regulation that prohibits reserve detailers from serving on promotion boards; second, the presence of Chaplains Horn and Wildhack, who are both members of the Presbyterian Church (USA), violates the Navy's regulations because each has a legal interest in the matter; third, CAPT Wildhack's presence violates the Navy's regulations because he had previously written a law review article "on the issues in [Harkness' previous] legal case;" and fourth, the Navy's Promotion Board procedures allow for denominational favoritism in violation of the Establishment Clause. (ECF No. 42-3 at 1-2.) The Secretary addressed each of these contentions in his Action Memo. (ECF No. 42-2.) For the reasons set forth below, the Court finds that the Secretary's decision to not convene an SSB for the FY 2014 Promotion Board was not arbitrary, capricious or contrary to law. The Court addresses Harkness' claims that the FY 2014 Promotion Board was procedurally defective

in this section of the order, and analyzes Harkness' constitutional challenges in the next section, along with Harkness' other constitutional arguments.

As to the alleged procedural violations connected to the FY 2014 Promotion Board, Harkness first contends that CAPT Wildhack's membership on that board violated SECNAVINST 1401.3A, which states that "[o]fficers assigned as detailers . . . may not be appointed as board members while serving in th[at] assignment[] or for one year following reassignment." However, CAPT Wildhack was not a detailer when he was a member of the promotion board or at any time for one year prior to his membership on the promotion board. (ECF No. 42-2 at 4.) In his Action Memo, the Secretary demonstrated that CAPT Wildhack was an operational support officer who supported detailers in their duties, but was not in fact a detailer. (ECF No. 42-2 at 4.) Harkness conceded this point in both his briefs on the issue and at the hearing before the Court. Now, however, Harkness contends that operational support officers function as *de facto* detailers, and, accordingly, should be proscribed from being members of promotion boards. (ECF No. 44-1 at 9-10.) Harkness' pivot fails because the regulation prohibits those *assigned* as detailers from being voting members of promotion boards, and, therefore, CAPT Wildhack's membership on the board did not violate SECNAVINST 1401.3A. Denying Harkness' request on this ground was not arbitrary, capricious or contrary to law.

As to the potentially illegal presence of both Chaplains Horn and Wildhack on the board, Harkness' position is muddled, but he appears to have made two claims to the Secretary: first, that because Chaplains Horn and Wildhack are both from the same church, their presence on the board does not properly reflect the diversity of the Navy's chaplains; and, second, that their presence violates the selection board's instructions that require disqualification of a member of the board who is an "accuser/accused in legal proceedings" involving the applicant. (ECF No.

42-3 at 1.)  The first claim is not a violation of the Secretary's regulations because SECNAVINST 1401.3A "expressly requires that CHC board members 'shall be nominated without regard to religious affiliation.'"  (ECF No. 42-2 at 4.)  The fact that the two chaplain board members happened to be from the same denomination, when they are chosen without regard to religious affiliation, is not a procedural defect.  Therefore, denying Harkness' request on this ground was not arbitrary, capricious or contrary to law.

The second claim, that Chaplains Horn and Wildhack's membership on the board violated the Secretary's regulations regarding relationships with applicants, has no merit or support.  Board regulations state that being "accused in legal proceedings" is "not disqualifying, [although it] may affect the perceived integrity of the board."  BUPERSINST 1401.5A.  The Secretary, in denying Harkness' request on this ground, explained that Chaplains Horn and Wildhack are not accused in any legal proceedings because they are not named as defendants in any legal proceedings brought by Harkness.  (ECF No. 42-2 at 4-5.)  Moreover, the fact that CAPT Wildhack wrote a law review article about the same types of claims that Harkness brought in a different lawsuit does not make him a part of any legal proceedings and is not a conflict of interest under the Secretary's regulations.  In fact, "board members are explicitly instructed by SECNAV's administrative brief that they may, in their deliberations, discuss personal knowledge and evaluation of the professional qualifications of eligible officers."  (ECF No. 42-2.)  The Secretary's decision to deny an SSB for these procedural reasons is not arbitrary, capricious or contrary to law.  The Court now turns to Harkness' allegations of constitutional impropriety regarding the composition and procedures utilized by the 2012 SSB and the FY 2014 Promotion Board.

## IV.    HARKNESS' THIRD CLAIM: ALLEGED CONSTITUTIONAL VIOLATIONS BY PROMOTION BOARDS

As an initial matter, Harkness has standing to assert constitutional challenges to the

promotion board procedures, but only insofar as he has already presented them to the Secretary.

(ECF No. 28 at 10-11); see also Reilly v. Sec'y of Navy, 12 F. Supp. 3d 125, 135 (D.D.C. 2014)

("To be sure, it is a basic tenet of administrative law that parties are required to exhaust any

available administrative remedies before seeking relief in the federal courts."); Harkness v.

United States, 727 F.3d 465, 470 (6th Cir. 2013) ("The text of this provision expressly takes

away the jurisdiction that other statutes, including 28 U.S.C. § 1331, confer on the federal courts

to hear promotion-based claims.")  It has long been established that, when required to do so by

statute, even questions of constitutional propriety must first be presented to the agency, as

explained in Juffer v. Caldera, 138 F. Supp. 2d 22, 24-25 (D.D.C. 2001):

> [T]he plaintiff asserts that the [agency] is not empowered to consider
> constitutional claims, that the exhaustion requirement is relaxed with respect to
> constitutional questions, and that exhaustion would be futile because the Secretary
> of the [agency] is biased.  Although these theories have long been relevant in the
> field of administrative exhaustion, their import in this case is eviscerated by the
> fact that exhaustion in this case is mandated by statute.  This legislative edict
> necessarily preempts these judicially created doctrines.

Here, §14502 mandates exhaustion and, thus, even constitutional challenges must be presented to

the Secretary.  Harkness satisfied that requirement by presenting his constitutional challenges to

the Secretary in his requests for a second SSB in 2012 and an SSB to review the FY 2014

Promotion Board.  (See ECF No. 28 at 10.)  Accordingly, for purposes of summary judgment,

the Court will review Harkness' first two counts pursuant to § 14502.  See Harkness v. United

States, 2011 WL 3902756, at *12 (W.D. Tenn. Sept. 6, 2011) ("exhaustion in this case is

mandated by statute even if it is a constitutional question"), aff'd, 727 F.3d 465 (6th Cir. 2013).

A.  Establishment Clause

The gravamen of Harkness' constitutional claim in his Complaint and in his SSB requests to the Secretary is that the Navy's promotion board procedures violate the Establishment Clause by "allow[ing] one board member who is a denominational representative to manipulate the board."  (ECF No. 42-3 at 1.)  For the reasons set forth below, the Court finds that the challenged procedures do not violate the Establishment Clause.

In his request to the Secretary to review the FY 2014 Promotion Board, Harkness states that denominational representatives are permitted to "manipulate the board because of the small number of board members and secret vote with no accountability; the use of a Chaplain Corps flag officer as president of the selection board or board member; the failure of each board member to individually review and vote based on his/her review, a practice followed by the Army and Air Force; and the delegation of governmental authority to award or deny benefits to denominational representatives without effective guarantees that power will be used for solely neutral and non-ideological purposes."  (ECF No. 42-3 at 2.)  In both that request and in his Complaint, Harkness submits a report by a statistical expert regarding the Navy's promotion board procedures.  (ECF No. 42-4).  Harkness points specifically to page 35, paragraph 2.204 and Table 9 of the report, where the expert reviewed the Navy's Chaplain Corps promotion data from 1981 to 2000 and found a 10% disparity in promotion to the position of Commander and a 28% disparity in promotion to the position of Captain in favor of chaplain candidates who shared the same denomination as the Chief of Chaplains.  (ECF No. 42-4 at 35.)  The report suggested that "the Chief's influence is not naked psychological speculation . . . it is an explanation for what happens when members of a promotion board considering a group of eligible candidates,

required to select some and not to select others, encounter a candidate from the Chief's denomination." (ECF No. 42-4 at 35.)

There are two standards that a court may apply when reviewing a challenge under the Establishment Clause: if the challenged government practice prefers one religion over another, the court applies strict scrutiny pursuant to Larson v Valente, 456 U.S. 228 (1982); but if the challenged government practice prefers religion over non-religion, the court applies a three-pronged test pursuant to Lemon v Kurtzman, 403 U.S. 602 (1971). Adair v. England, 183 F. Supp. 2d 31, 47 (D.D.C. 2002). In his Action Memo, the Secretary responded to Harkness' challenge by stating that, "[i]n regards to [Harkness'] potential allegations that denominational representation on CHC [Promotion Boards] violates the Establishment Clause, courts have repeatedly found otherwise and ruled in the government's favor on this issue." (ECF No. 42-2 at 8.) As authority, the Secretary cited Ashcroft v Iqbal, 556 U.S. 662 (2009), Larson, 456 U.S. 228 (1982) and Lemon, 403 U.S. 602 (1971).

The Secretary also explained in the Action Memo that "Congress has statutorily required that at least one member of the competitive category under consideration should serve on each selection board, 10 U.S.C. § 14102(c)(1), and that the board proceedings should remain confidential, 10 U.S.C. § 14104 . . . Because the challenged practices do not facially differentiate among religions, the Larson [strict scrutiny] standard does not apply." (ECF No. 42-2 at 8) (citing Hernandez v. Comm'r, 490 U.S. 680, 695 (1989)). Turning next to the Lemon standard, the Secretary stated that both the secret balloting, which is required by statute, and the "established practice that a chaplain serve as board president, have valid secular purposes and serve valid secular ends, which the Court in Lemon requires." The Secretary therefore determined that the at-issue procedures do not violate the Establishment Clause.

In Harkness' Partial Motion for Summary Judgment, he asserts that the Court must apply either <u>Larson</u>'s strict scrutiny standard or the <u>Lemon</u> three-pronged test. (ECF No. 36-1 at 9.) Harkness then argues that the statistical evidence shows a "practice suggesting 'a denominational preference,'" which automatically "triggers strict scrutiny" under <u>Larson</u>. (ECF No. 36-1 at 8) (citing <u>County of Allegheny v. ACLU</u>, 492 U.S. 573, 608-09 (1979)). Here, however, the Court finds that the government has not preferred one religious organization over another, and therefore the Court does not review the practices with strict scrutiny.

Simply because a plaintiff alleges that the government has preferred one religion over another does not make it so. For instance, in <u>Varner v. Stovall</u>, 500 F.3d 491, 495 (6th Cir. 2007), the Sixth Circuit found that Michigan's clergy-penitent evidentiary privilege did not favor belief systems in which individuals communicate with God through an intermediary to the disfavor of belief systems in which individuals communicate with God directly. The petitioner, who belonged to a belief system in which individuals communicate directly with God, did not receive the benefit of the clergy-penitent evidentiary privilege for her journal entries that were addressed to God. Accordingly, she argued that <u>Larson</u>'s strict scrutiny should apply to her challenge to the clergy-penitent privilege because she contended that it favored some religions (those in which individuals communicate with God through an intermediary) over other religions (those, such as hers, in which individuals communicate directly with God). The Court, however, found this argument lacking because the privilege failed to cover any journal entries for any religions. "Rather than 'focus[ing] precisely and solely upon *religious organizations*,' <u>Larson</u>, 456 U.S. at 246 n. 23 (emphasis added), the privilege provides a limitation on the *manner* in which an individual of any religious denomination may seek spiritual guidance and still retain the confidentiality of the communication." <u>Varner v. Stovall</u>, 500 F.3d 491, 498-99 (6th Cir.

2007) (emphasis in original). As applied here, the manner in which the promotion boards review all applicants does not prefer a specific religion over another; rather, the procedures are universally applicable to all religious denominations, and are therefore not subject to Larson's strict scrutiny.

"Larson teaches that, when it is claimed that a denominational preference exists, the initial inquiry is whether the law facially differentiates among religions. If no such facial preference exists, we proceed to apply the customary three-pronged Establishment Clause inquiry derived from Lemon." In re Navy Chaplaincy, 738 F.3d 425, 430 (D.C. Cir. 2013). Here, the board procedures at issue do not favor religion on their face, and, in fact, they explicitly require board members to forego any religious biases in making their decision. SECNAVINST 1401.3A ("Chaplain Corps board members shall be nominated without regard to religious affiliation."); see also Gillette v. United States, 401 U.S. 437, 450 (1971) ("The critical weakness of petitioners' establishment claim arises from the fact that [the statute], on its face, simply does not discriminate on the basis of religious affiliation or religious belief . . . ."). There is clearly no facial preference for any religion in any of the at-issue procedures, and, therefore, the Court will not apply the strict scrutiny test of Larson to the promotion board procedures.

Of course, a statute's facial neutrality does not absolve the statute from Establishment Clause scrutiny, "for the Establishment Clause forbids subtle departures from neutrality, 'religious gerrymanders,' as well as obvious abuses." Gillette, 401 U.S. at 452. The Court therefore turns to the Lemon test. "In order to pass constitutional muster under the Lemon test, laws and government practices involving religion must: (1) have a secular legislative purpose; (2) have a principal or primary effect that neither advances nor inhibits religion; and (3) not

result in excessive entanglement with religion or religious institutions." Bonham v. D.C. Library Admin., 989 F.2d 1242, 1244 (D.C.Cir.1993) (citing Lemon, 403 U.S. at 612–13).

The Secretary urges this Court to follow the reasoning in In re Navy Chaplaincy in which the D.C. Circuit evaluated the same statistical evidence and arguments offered here, and found that the plaintiffs were unlikely to succeed on the merits when applying the Lemon test. (ECF No. 34-1 at 14). Harkness retorts that the In re Navy Chaplaincy decision is "inconsistent with binding Sixth Circuit and Supreme Court precedent . . . [because the] In re Navy Chaplaincy[] decision rests on claims of 'disparate treatment' . . . terms those chaplain plaintiffs never used or raised." (ECF No. 46 at 14.) Here, Harkness has deliberately excluded any reference to the terms "disparate" or "intent" to avoid that same "inconsistency." (ECF No. 20 at 13); (ECF No. 46 at 14.) Harkness contends that his Establishment Clause claim is based on "denominational preferences" and not disparate treatment. (ECF No. 46 at 14-15.) He states that "[t]his Circuit finds denominational neutrality an important legal principle," and the Court must pay particular attention to the effect prong of the Lemon test. (ECF No. 46 at 15) (citing Adland v. Russ, 307 F.3d 471, 484 (6th Cir. 2002)). However, Harkness fails to note that the court in In re Navy Chaplaincy only considered disparate treatment when reviewing the plaintiffs' Equal Protection claims. The court did properly apply the Lemon test when reviewing the plaintiffs' Establishment Clause challenge. See In re Navy Chaplaincy, 738 F.3d 425, 430 (D.C. Cir. 2013). Accordingly, the Court finds the D.C. Circuit's reasoning apt and informative.

In In re Navy Chaplaincy, the plaintiffs argued that the statistical evidence demonstrated that the procedures have the primary effect of advancing one religion over another, thus violating the effect prong of Lemon. The court found the plaintiffs' Establishment Clause challenge failed:

[The plaintiffs] claim that the challenged policies have the "effect" of advancing particular denominations, which at least in this context entails application of the "endorsement" test. <u>Bonham[ v. District of Columbia Library Admin.</u>], 989 F.2d [1242,] 1245 [(1993)]. That in turn takes us to the question of whether the selection policies *appear* to endorse religion in the eyes of a "reasonable observer," who "'must be deemed aware' of the 'history and context' underlying a challenged program." <u>Zelman v. Simmons–Harris</u>, 536 U.S. 639, 655, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002) (quoting <u>Good News Club v. Milford Central School</u>, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001)). As the policies themselves are facially neutral, the chaplains under this theory argue in effect that a reasonable observer, contemplating the results of the policies (as gathered in the chaplains' statistical evidence), would infer that the government had as a practical matter endorsed the liturgical denominations.

Assuming arguendo that it is proper to see the "reasonable observer" as a hypothetical person reviewing an array of statistics (the observer is already a judicial construct rather than a human being), the figures in this case would not lead him to perceive endorsement. Here the plaintiffs' statistics fail to show government endorsement of particular religions under the reasonable observer test for the same reason that, in the equal protection context, they failed to show intentional discrimination paralleling that of <u>Gomillion</u> or <u>Yick Wo.</u>

<u>In re Navy Chaplaincy</u>, 738 F.3d 425, 430-31 (D.C. Cir. 2013) (emphasis in original). That decision rests on the finding that the plaintiffs failed to show any government endorsement of religion, or "a principal or primary effect that either advances or inhibits religion." After reviewing the same statistical evidence, this Court finds the same.

Harkness' statistical support fails to demonstrate a primary effect of advancing or inhibiting particular denominations for a variety of reasons: 1) the submitted statistics utilize anachronistic data from 1981-2000, or, in other words, data for a period that ended more than fifteen years ago covering promotions which operated under *different* promotion board procedures; 2) the paltry disparities in promotion percentages between denominations, across such a small sample size, does not indicate any governmental preference for one denomination over another; and 3) there are various deficiencies in the soundness of Harkness' statistical methodologies. See <u>In re Navy Chaplaincy</u>, 738 F.3d 425, 429 (D.C. Cir. 2013) ("Statistical

significance, assuming it has been shown, indicates only a low probability for one possible cause of the alleged disparities—random chance. The chaplains have made no attempt to control for potential confounding factors, such as promotion ratings, education, or time in service."). For those reasons, the Court finds that the promotion board procedures do not run afoul of <u>Lemon</u>'s effects prong.

Harkness next argues that "the Navy's delegation to persons defined by their religious identity the civic power to bestow or deny promotions to other chaplains, persons defined by their religious identity, violates the Establishment Clause's ban on the fusion of discretionary civic and religious power absent effective controls guaranteeing religious neutrality." (ECF No. 36-1 at 10.) For support, Harkness cites <u>Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet</u>, 512 U.S. 687, 696 (1994), in which the Supreme Court found that "the statute creating the Kiryas Joel Village School District, departs from [the Establishment Clause] by delegating the State's discretionary authority over public schools to a group defined by its character as a religious community, in a legal and historical context that gives no assurance that governmental power has been or will be exercised neutrally." Harkness contends that each element of <u>Grumet</u> is present here: 1) selecting officers for promotion is an exercise of the sovereign's discretionary authority, 2) chaplains are unique officers defined by their religious identity, and 3) there is no evidence that the power to promote will be and has been neutrally employed. (ECF No. 36-1 at 10-18.) However, Harkness' argument misses the mark on two fronts: first, chaplains are chosen to sit on promotion boards because they are officers who belong to the same staff corps as the chaplains being considered for promotion by the promotion boards; and, second, there is no evidence that the power to promote has *not* been neutrally employed.

In Adair v. England, 183 F. Supp. 2d 31, 61 (D.D.C. 2002), the court held that requiring members of the Chaplain Corps to rate each other in promotion decisions was too speculative to be considered an injury-in-fact to assert an Establishment Clause challenge. The Adair court relied on the following analysis from an earlier case:

> Staff corps promotion boards have been traditionally composed of officers who are members of the same staff corps. In this manner, doctors consider doctors, judge advocates consider judge advocates and so on. The logic is apparent. Those in the same profession are more qualified to evaluate others in their profession. It is neither likely that a doctor would know how to evaluate a chaplain, nor vice versa.

Emory v. Secretary of the Navy, 708 F.Supp. 1335, 1339 (D.D.C.1989). The Adair court heard the same Grumet challenge as here (although it was under Grumet's predecessor, Larkin v. Grendel's Den, Inc., 459 U.S. 116, 103 (1982)), and rejected it, holding that, "[a]s officers, it is appropriate for [chaplains] to undertake the duties routinely performed by Naval officers, including serving on promotion boards." Adair v. England, 183 F. Supp. 2d 31, 61 (D.D.C. 2002). This Court holds the same. These officers are chosen to sit on the promotion boards because they are Naval officers with experience in the competitive category for which the applicant is being considered – not because they are members of a religious sect or denomination. There has been no "fusion of governmental and religious functions;" rather, the government has used officers in the Navy to conduct governmental functions. Cf. Grendel's Den, 459 U.S. 116, 126 (1982).

Second, even assuming *arguendo* that the decision-making power has been delegated to a group defined by its character as a religious community, the evidence does not substantiate Harkness' claims that the power is used non-neutrally. Harkness' statistical report contains several defects, and these defects make it impossible to say with authority that any

denominational preference occurs because of the promotion board procedures.  Without controlling for experience, education, various duties, or a number of other impactful, independent variables, the statistical significance in the report is unconvincing.

Harkness' arguments that do not rely on the statistical report fall short as well.  For instance, Harkness states that because the Chief of the Chaplain Corps serves as Board President, he has an undue influence on the way the members of the promotion board vote; however, Harkness simultaneously argues that the secret balloting allows a single board member to sabotage an applicant's chances at promotion with confidentiality and impunity.  (ECF No. 36-1 at 17, 19.)  These arguments are inconsistent with one another.

Additionally, applying Grendel's Den, the seminal case on delegation and entanglement, the Court finds that the promotion board policies provide sufficient assurance that the delegated power is used neutrally.  In Grendel's Den, the Supreme Court overturned a statute that delegated to churches the power to veto the granting of a liquor license to any establishment within 500 feet of their institutions.  Grendel's Den, 459 U.S. at 125.  The Court found that there was no assurance that the churches' power would be used in a neutral manner because "[t]he churches' power under the statute [wa]s standardless, [and] call[ed] for no reasons, findings, or reasoned conclusions."  Because of that, the power could "be used by churches to promote goals beyond insulating the church from undesirable neighbors; it could be employed for explicitly religious goals."  Id. at 125.  The Court noted that, while it may presume that churches act in good faith in the deployment of their power, nothing in the "terms [of the statute] require[d] that [the] churches' power be used in a religiously neutral way."  Id.

Administrative agencies also enjoy a presumption that they act properly and in accordance with the law.  Parra-Morela v. Holder, 504 Fed. Appx. 461, 462 (6th Cir. 2012); see

also Brown v. Johnson, 743 F.2d 408, 413 (6th Cir. 1984) (holding that prison officials' decision to permit some religious groups to congregate, but not others, would normally violate the Establishment Clause; however, because prison officials are given deference when safety concerns are at issue, the decision did not violate the Establishment Clause). However, here, unlike in Grendel's Den, there is also a regulation requiring neutrality in the deployment of a promotion board officer's duties. Each officer on a promotion board must swear and sign an oath that they "perform their duties as a member of the board without prejudice or partiality, having in view both the special fitness of officers and the efficiency of their service." SECNAVINST 1420.1B. Although having officers sign an oath does not guarantee that they will abide by that oath, this Court is not in a position to deem the policies of the promotion board as violating the Establishment Clause for the reasons that Harkness propounds. Under Grumet and Grendel's Den, the Secretary's denial of Harkness' request for an SSB for the 2012 SSB and the FY 2014 Promotion Board, and the actions taken by the SSB convened in 2012 were not contrary to law. Harkness' Motion for Partial Summary Judgment on this issue is **DENIED**, and the Secretary's Motion for Summary Judgment as to Harkness' Establishment Clause claim is **GRANTED**.

      B. Due Process Claim and Equal Protection Claim

      In addition to his Establishment Clause claim, Harkness' Complaint mentions the Due Process Clause in two paragraphs, one of which states that the Navy's "past and current chaplain selection board procedures and composition as described [within the Complaint] violate the . . . Due Process Clause." (ECF No. 15 at 1-2.) The Secretary seeks Summary Judgment of Harkness' Due Process challenge, asserting that Harkness "cannot demonstrate a constitutionally protected interest in a military promotion." (ECF No. 34-1 at 10) (citing Blevins v. Orr, 721

F.2d 1419 (D.C. Cir. 1983)).  The Due Process clause prevents the taking of life, liberty or property without due process of law.  U.S. Const. amend. V.  An aggrieved party, however, must have a legitimate property interest in whatever has been taken in order to assert that the Government has violated the Due Process Clause.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  Here, Harkness does not have a property interest, as recognized by the Due Process Clause, in a promotion within the Navy.  Pauls v. Sec'y of Air Force, 457 F.2d 294, 297 (1st Cir. 1972) ("It is well-established law that military officers serve at the pleasure of the President and have no constitutional right to be promoted.").  This would appear to be the end of Harkness' Due Process challenge, but Harkness unsuccessfully contends otherwise.

In response to the Secretary's Motion, Harkness asserts that, by using the language "Due Process Clause" in his Complaint, he was actually referring to the Fifth Amendment's incorporation of the Fourteenth Amendment's Equal Protection jurisprudence, as elucidated by Buckley v. Valeo, 424 U.S. 1, 93 (1976).  Harkness then confuses the holding in W. Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 639 (1943), where the Court distinguishes between Fourteenth Amendment incorporation of the First Amendment through its Due Process Clause, and the fact that the Fourteenth Amendment's Due Process Clause also has *independent* force against the states beyond incorporation.  Harkness quotes from this case, but substitutes the court's use of the "Fourteenth Amendment" with the "Fifth Amendment" in a way that is disingenuous to the history of the Constitution and the independent import of these amendments. (ECF No. 46 at 13.)  In the end, however, Harkness settles by simply reasserting his Establishment Clause claim, while inexplicably including the constitutional catchphrase "fundamental right."  (ECF No. 46 at 13.)  The same confusing placement of the terms "equal protection" and "due process clause" appear in Harkness' Motion for Partial Summary

Judgment, and they are equally unclear and untethered to coherent analysis. (ECF No. 36-1 at 18, 25.) If Harkness intended to make a distinct Equal Protection claim when he used the term "Due Process Clause," it is unattainable from reading the Complaint, his Response to the Secretary's Motion for Summary Judgment, or his Motion for Partial Summary Judgment. For that reason, and because Harkness has no property interest in his promotion, any claim asserting a violation of the Due Process Clause is **DISMISSED WITH PREJUDICE**.

V.      HARKNESS' FOURTH CLAIM: REVIEWING THE ACTIONS OF HIS 2012 SSB

As noted, *supra* n.5, Harkness failed to directly challenge the actions of the 2012 SSB in his Complaint under §14502(h)(2). Rather, Harkness petitioned the Secretary to convene a second SSB pursuant to §14502(h)(1), arguing that the 2012 SSB was *void ab initio*. Out of an abundance of caution, the Court finds that, even if a claim seeking review of the actions of the 2012 SSB under §14502(h)(2) could be construed from Harkness' Complaint, that challenge would nonetheless fail as there has been no allegation of a material error of fact or material administrative error, and the board's actions were not contrary to law.

In his Complaint, Harkness pled that "the two 2012 SSB chaplain board members should not have been on the [2012 SSB]" because one of the chaplains "filed a declaration opposing an In re Navy Chaplaincy motion by . . . Harkness and other plaintiffs," and the other chaplain had originally been selected for promotion by the FY 2007 Promotion Board (i.e., the promotion board that the 2012 SSB was reviewing). (ECF No. 15 at 9.) The first claim appears to be a retaliation claim, whereas the second simply questions the ability of a board member to be neutral. The Court finds that the retaliation claim is unfounded, and the second claim raises no cognizable legal issue.

Harkness' first claim fails because filing a declaration in a previous lawsuit to which Harkness was a party does not prohibit membership on a promotion board. The Navy's regulations forbid membership on a selection board when the member is an "accuser/accused in legal proceedings" involving the applicant – not when the member submits a declaration. <u>See</u> BUPERSINST 1401.5A. Additionally, Harkness' retaliation claim is too tenuous to be considered cognizable, let alone contrary to law. As is discussed above, Harkness offers no support that this chaplain retaliated against him other than providing an ambiguous, second-hand, anonymous witness' statement. The Court cannot find anything in the administrative record that supports Harkness' claim of retaliation by the 2012 SSB.

Harkness' second claim similarly fails. Harkness asserts that because one of the board members on his 2012 SSB was promoted by the FY 2007 Promotion Board, "[t]he objective observer would understand this provides the [chaplain] a motive to vindicate his selection by denying . . . Harkness promotion." (ECF No. 15 at 10.) First, this claim is wildly speculative. Second, it is unclear what law this would violate. Third, the SSB would only revisit the denial of Harkness' promotion, but not other promotions made by that promotion board. Therefore, the actions of the 2012 SSB are not contrary to law on this ground, and summary judgment is **GRANTED** as to this claim.[8]

VI.  <u>HARKNESS' MOTION TO STRIKE THE SECRETARY'S DISPOSITIVE MOTIONS</u>

On April 30, 2014, the Secretary filed a Motion to Dismiss for Failure to State a Claim ("first motion"). (ECF No. 16.) After full briefing on that motion, the Court granted it in part and denied it in part on March 24, 2015. (ECF No. 28.) Now, Harkness argues that the Secretary's current Motion to Dismiss and Summary Judgment ("current motion") is actually a

---

[8] Harkness' Establishment Clause challenge to the 2012 SSB was addressed separately above.

motion for reconsideration of the Secretary's first motion, and, accordingly, Harkness filed a Motion to Strike the Secretary's current motion. (ECF No. 44.) Harkness posits that the Secretary's current motion is "a poorly camouflaged motion for revision of the court's March 2015 interlocutory order;" that the motion "relies on misleading and deceptive arguments addressing CAPT Wildhack's status" on the FY 2014 Promotion Board; and the motion "ignores the court's role as defender of the Bill of Rights and improperly seeks to cut off discovery." (ECF No. 44-1 at 2.) The Secretary argues that Harkness' Motion to Strike "is devoid of any valid reason to strike [the Secretary's current] [m]otion and merely provides additional argument in opposition to that motion." (ECF No. 52 at 4.) The Court agrees with the Secretary.

Harkness' first argument fails for two reasons: 1) the Secretary asserts different bases for dismissal of Harkness' claims across the two motions: the first motion argues failure to state a claim and exhaust administrative remedies, and the current motion asserts lack of subject matter jurisdiction, and 2) when the Secretary does offer similar arguments across the two motions, they are proposed under different standards of review – motion to dismiss versus motion for judgment on the administrative record – and are therefore acceptable. As to Harkness' second and third arguments as to why the Secretary's current motion should be stricken, they are simply arguments against the merits of the Secretary's current motion, as opposed to reasons to strike it. Those substantive arguments have been addressed above. Accordingly, the Court **DENIES** Harkness' Motion to Strike.

VII.     HARKNESS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION

On January 28, 2016, Harkness filed a Motion for Leave to File Supplemental Declaration Out of Time. (ECF No. 71.) Within the Motion, Harkness files a declaration proffering information that was previously unknown to him in support of his Motion to Stay.

However, the declaration is evidence outside of the administrative record, and based on the Court's ruling *supra*, such evidence is inappropriate. Accordingly, the Court **DENIES** Harkness' Motion for Leave to File Supplemental Declaration.

CONCLUSION

For the aforementioned reasons, the Secretary's Motion to Dismiss and Motion for Summary Judgment is **GRANTED** and Harkness' remaining claims are **DISMISSED WITH PREJUDICE**, Harkness' Motion for Partial Summary Judgment is **DENIED**, Harkness' Motion to Stay is **DENIED**, Harkness' Motion to Strike is **DENIED**, and Harkness' Motion for Leave to File Supplemental Declaration is **DENIED**.

**IT IS SO ORDERED**, this 31st day of March, 2016.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE